IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DEIRDRE L. BOSTICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18-CV-1042 |
| | ) | |
| CABARRUS COUNTY DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff initiated this action *pro se* on December 26, 2018, alleging violations of the American with Disabilities Act, 42 U.S.C. § 12101, as amended (the "ADA") against her employer, Defendant Cabarrus County Department of Health and Human Services. (ECF No. 2.) Before the Court is Defendant's Motion for Summary Judgment. (ECF No. 26.) For the reasons stated herein, the motion will be granted.

## I.     LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotations omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant . . . and

to draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569, and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the moving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see Celotex*, 477 U.S. at 324. The judicial inquiry on summary judgment "thus scrutinizes the plaintiff's case to determine whether plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of [her] claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

Case 1:18-cv-01042-LCB-JEP   Document 34   Filed 05/26/22   Page 2 of 22

## II.    BACKGROUND

Plaintiff was hired to work for Defendant as an Income Maintenance Coordinator I in June 2008.  (ECF Nos. 2 ¶¶ 7–8; 9 ¶¶ 7–8; 27-1 ¶¶ 8–9; 27-2 ¶ 7.)  In this position, Plaintiff dealt with clients both at the front desk and in the call center.  (ECF No. 27-2 ¶ 10.)  At the front desk, Plaintiff had in-person contact with clients while in the call center she did not.  (*Id.* ¶ 9.)  While working in this position, Plaintiff was involved in incidents with clients and her coworkers which resulted in her receiving several disciplinary warnings.  (ECF No. 27-1 ¶¶ 11–14; *id.* at 22–30.)

Following complaints from coworkers at the front desk, including allegations of "creating a hostile working environment for co-workers and clients," Plaintiff was "placed on non-disciplinary suspension for investigatory purposes."  (*Id.* ¶ 16; *id.* at 32; ECF No. 27-2 ¶ 11.)  "[T]he investigation found that there 'is an obvious dysfunction and tension between [Plaintiff] and other staff members within the front desk area, which is creating an uncomfortable working environment and risking customer service to [Defendant's] clients."  (ECF Nos. 27-1 ¶ 17; *id.* at 34; 27-2 at 10.)  As a result, Plaintiff "was reassigned away from the front desk and into the" call center area.  (ECF Nos. 27-1 ¶ 17; *id.* at 34; 27-2 ¶ 13; *id.* at 10.)

After receiving notice of the findings, Plaintiff took FMLA leave.  (ECF No. 27-2 ¶ 15.)  On December 4, 2017, Plaintiff was provided "with written notice that her FMLA protections would expire on December 14, 2017."  (ECF No. 27-1 ¶ 18; *id.* at 35.)  The letter also requested that Plaintiff "provide an updated provider note and notify [Defendant] about whether she intended to return to" work.  (*Id.* ¶ 18; *id.* at 35.)  On December 8, 2017, Defendant received an email from Juwairaiyah Foxx, a nurse practitioner assigned to the

3

Cabarrus County Employee Health and Wellness Center ("Ms. Foxx"), stating that Plaintiff "felt she was ready to return to work on December 14, 2017," with reasonable accommodations and that Plaintiff was requesting that she be returned to the front desk because of "her anxiety and reported claustrophobia." (*Id.* ¶ 19; *id.* at 37.) The same day, Defendant also received a letter from Plaintiff's attorney that indicated that Plaintiff was scheduled to return to work on December 14, 2017. (*Id.* ¶ 20; *see id.* at 38.) The letter also stated that Plaintiff suffered "multiple impairments that substantially limit her major life activities," "caused by anxiety, depression, and claustrophobia." (*Id.* ¶ 20; *see id.* at 38.)

On December 14, 2017, Plaintiff returned to work. (*Id.* ¶ 21.) "However, she reportedly became upset and disruptive when she was informed that she would not be returning to the front desk." (*Id.*) Defendant requested that Plaintiff "present certification from her health care provider that she can resume work in accordance with" FMLA. (*Id.*) Plaintiff left "at that time and never resumed work." (*Id.*)

On December 19, 2017, Ms. Foxx notified Defendant that Plaintiff was not planning to return to work for Defendant "and declined a work release note or for Ms. Foxx to complete [Defendant's] reasonable accommodation request form." (*Id.* ¶ 23; *id.* at 41.) The next day, Defendant sent Plaintiff "a letter notifying her that [Defendant] intended to terminate her employment on December 28, 2017, unless she received a clearance letter . . . and returned to work on or before that date." (*Id.* ¶ 24; *id.* at 42.) Plaintiff failed to comply, and as a result, she was terminated on December 28, 2017, "due to her failure to return from medical leave." (*Id.* ¶ 26; *id.* at 45.)

Plaintiff submitted a discrimination charge to the Equal Employment Opportunity Commission ("EEOC") on February 5, 2018, alleging discrimination on the basis of

4

disability. (ECF Nos. 2 ¶ 21; 9 ¶ 21; 27-1 ¶ 27; *id.* at 47.) Plaintiff subsequently "received her Notice of Right to Sue from the EEOC, with a mailing date of September 21, 2018," (ECF Nos. 2 ¶ 22; 9 ¶ 22), and filed this lawsuit on December 26, 2018, (ECF No. 2).

Defendant now moves for summary judgment on the grounds that Plaintiff's Complaint was filed after the statutory deadline, and that her discrimination and failure to accommodate claims under the ADA fail as a matter of law. (ECF No. 27 at 8–24.)

## III.   DISCUSSION

### A.   Timeliness of ADA Claims

Defendant first argues that summary judgment is appropriate, and this action should be dismissed, because Plaintiff's Complaint was filed late. (*Id.* at 8–10.) Plaintiff in her Response does not contest Defendant's position on this issue, she merely provides an explanation as to why her response to Defendant's Motion to Dismiss was not filed earlier. (ECF No. 31 at 1.) The Court concludes, however, that Plaintiff's Complaint was timely filed.

The enforcement procedures of Title VII of the Civil Rights Act of 1964 apply to ADA claims, 42 U.S.C. § 12117(a), including the provision providing that a plaintiff must file a civil action within 90-days after receipt of a Right to Sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *see Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 (1984); *Quinn v. Copart of Connecticut, Inc.*, 791 F. App'x 393, 395 (4th Cir. 2019). Where the date of receipt is unknown, "it is presumed that service by regular mail is received within three days pursuant to Rule 6(e) of the Federal Rules." *Nguyen v. Inova Alexandria Hosp.*, 187 F.3d 630, at *3 (4th Cir. 1999) (unpublished) (per curiam) (citing Fed. R. Civ. P. 6(e); *Baldwin*, 466 U.S.

at 148 n.1). A "claimant who fails to file a complaint within the 90-day period generally forfeits his right to pursue his claims." *Quinn*, 791 Fed. App'x at 395.

Section 2000e-5(f)(1) does not specify a method for computing time; therefore, the rules in Federal Rule of Civil Procedure 6(a) applies for the computation of the 90 days. *See* Fed. R. Civ. P. 6(a). Under Rule 6(a), when counting a period stated in days, the computation must "exclude the day of the event that triggers the period"; "count every day, including intermediate Saturdays, Sundays, and legal holidays"; and "include the last day of the period." Fed. R. Civ. P. 6(a)(1)(A)–(B). However, "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C).

Here, the EEOC mailed Plaintiff her Right to Sue letter on Friday, September 21, 2018. (ECF Nos. 2 ¶ 22; 9 ¶ 22.) Applying the three-day presumption of receipt provided in Rule 6(e), Plaintiff is presumed to have received notice of her right to sue on Monday, September 24, 2018. Thus, Plaintiff had ninety days following Monday, September 24, 2018, which was Sunday, December 23, 2018, to file suit. Because the ninetieth day was on a Sunday, Plaintiff had until the next day that was not a Saturday, Sunday, or legal holiday to file suit. Defendant concluded that Plaintiff should have filed her Complaint on Monday, December 24, 2018. Defendant, however, failed to recognize that the 24th was a legal holiday.

"Legal holiday" includes "any day declared a holiday by the President." Fed. R. Civ. P. 6(a)(6)(B). The President of the United States at the time issued an executive order which (1) directed that "[a]ll executive departments and agencies of the Federal Government shall be closed and their employees excused from duty on Monday, December 24, 2018," and

6

(2) provided that December 24 would fall within the scope of the statutes governing holiday "pay and leave of employees of the United States." *See* Exec. Order No. 13854, 83 Fed.Reg. 65481 (Dec. 18, 2018). Therefore, Monday, December 24, 2018, was a legal holiday, because it had been declared a holiday by the President. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1098–1099 (D.C. Cir. 2003) (holding that December 24th was a legal holiday where the President's executive order provided that "all executive branch departments and agencies of the Federal Government shall be closed and their employees excused from duty on December 24" and that "December 24 would fall within the scope of various laws governing holiday pay and leave for federal workers"). In addition, December 25, 2018, which was Christmas Day, was likewise a legal holiday. *See* Fed. R. Civ. P. 6(a)(6)(A) (providing that Christmas Day is a legal holiday). Thus, Plaintiff had until December 26, 2018, to file her Complaint and did in fact initiate her action on that date with the filing of the Complaint.

Accordingly, the Court concludes that Plaintiff's Complaint was timely filed and that Defendant, therefore, is not entitled to summary judgment as a matter of law on the ground that it was not timely filed.

### B. ADA Discrimination

Defendant next argues that it is entitled to summary judgment with respect to Plaintiff's claim for disability discrimination. (ECF No. 27 at 10–17.)

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "Disability discrimination may be proven through direct and indirect evidence or through the *McDonnell Douglas* burden-shifting framework." *Jacobs*, 780 F.3d at 572 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

7

802 (1973)). Plaintiff does not appear to point to any direct evidence of discrimination in her brief. (*See* ECF No. 31.) Therefore, Plaintiff must establish her claim under the *McDonnell Douglas* framework.

Under the *McDonnell Douglas* burden-shifting framework, the plaintiff has the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). If the plaintiff succeeds, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory explanation which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* Should the defendant satisfy its burden of production, the plaintiff has the final burden to persuade the factfinder that "the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

To establish a prima facie case for disability discrimination, a plaintiff must show "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." *Jacobs*, 780 F.3d 572. Defendant argues that Plaintiff's claim fails because "she cannot show she was a 'qualified individual' subject to ADA protections or that [Defendant] discharged her because of her disability." (ECF No. 27 at 11.) In addition, Defendant argues that even if she does meet her burden of establishing a prima facie case of discrimination, Plaintiff's claim still fails because Defendant had a legitimate, non-discriminatory reason for terminating her. (*Id.*)

8

*(1)  Plaintiff has failed to meet her burden that she is a qualified individual under the ADA*

The ADA only permits qualified individuals for the job to bring a discrimination claim. *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 212 (4th Cir. 1994). Under § 12111(8) of the ADA, a qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A function is essential to the position when "'the reason the position exists is to perform that function,' when there aren't enough employees available to perform the function, or when the function is so specialized that someone is hired specifically because of his or her expertise in performing that function." *Jacobs*, 780 F.3d at 579 (quoting 29 C.F.R. § 1630.2(n)(2)). "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

The job description for Plaintiff's position lists the following as some of the essential functions: (1) "Interviewing, gathering information, taking and processing applications, reapplications, applications for re-certification and process changes for Food and Nutrition, Medicaid, and Work First Family Assistance [ ] and Energy programs"; (2) "Computing initial budgets and revising budgets as changes occur in the household or in income"; (3) "Entering and maintaining case data in the appropriate country and state systems"; (4) "Gathering information at the front desk to route clients and scans documents"; (5) "Processing and scanning incoming agency mail"; (6) "Answering agency switchboard and

9

routing calls"; (7) "Answering incoming calls to call center"; and (8) "Maintaining records, files, and confidentiality." (ECF No. 27-1 at 8.)

Defendant does not dispute that Plaintiff was able to perform these aspects of her position as outlined in the job description. (ECF No. 27 at 2.) Rather, Defendant contends that as an Income Maintenance Caseworker I, customer service and teamwork are essential aspects of Plaintiff's position and that her duties include "Greeting all incoming clients/visitors coming/calling into agencies in a professional manner." (ECF No. 27-1 ¶ 10; *id.* at 12.) Caseworkers are also required to rotate to other areas of the Customer Service Center, including the Call Center, Mail Room, and Front Desk in order to complete their duties. (*Id.* ¶ 10; *id.* at 13.) Defendant argues that Plaintiff was unable to perform these essential functions of her position due to her lack of attendance, poor customer service, and disruptive behaviors with other employees. (ECF No. 27 at 12–13.)

Plaintiff in her Response to this motion does not directly address whether she is a qualified individual under the ADA. (*See* ECF No. 31.) However, because she is proceeding pro se the Court will construe her Response liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed.'"). In a section of her Response entitled Statement of the Facts, rather than cite to evidence in the record that would be admissible at trial to refute Defendant's assertion that she was unable to perform these essential functions due to her lack of attendance, poor customer service and disruptive behaviors with other employees, Plaintiff makes the following statements: "Some of [the] allegations made by [Defendant] regarding Plaintiff were absolutely fabricated," and Defendant "has a tendency of fabricating facts to suit the situation at the time." (ECF No. 31 at 2.) Such conclusory statements without factual or evidentiary support would be

10

inadmissible trial. *Washington v. City of Charlotte*, 219 Fed. App'x 273, 277 (4th Cir. 2007) ("It is well established that a summary judgment motion cannot be successfully opposed by unsubstantiated allegations."). Plaintiff even fails to specify which allegation or alleged facts she claims have been fabricated. In addition, Plaintiff in her Response cites to a letter from a program manager, (ECF No. 31-5), in which the manager is responding to a grievance Plaintiff filed in 2014 against her supervisor, (*id.*). The Court concludes that this letter provides far more support for Defendant's contentions as it demonstrates Plaintiff's history of receiving written warnings from her employer regarding customer complaints, Plaintiff calling out sick the day after her requested vacation was denied, and Plaintiff handling personal phone calls and personal business at the front desk. (*Id.*)

In addition, the evidence in the record also shows that Plaintiff was unable to perform the essential function of attendance. "[A]n employee who does not come to work cannot perform any of his job functions, essential or otherwise." *Tyndall*, 31 F.3d at 213 (internal quotation omitted). An essential job function includes a regular and reliable level of attendance. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 197 (4th Cir. 1997), *abrogated on other grounds by Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999); *Lamb v. Qualex, Inc.*, 33 Fed. App'x 49, 56 (4th Cir. 2002). "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Tyndall*, 31 F.3d at 213. Here, the parties do not dispute that Plaintiff was not attending work during her FMLA leave[1] and further, after her leave and during the 14 days

---

[1] An employee's absence during FMLA leave can be considered in the determination of whether Plaintiff can perform the essential function of attendance under the ADA. *See Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847, 851 (8th Cir. 2002); *Payne v. Fairfax Cnty.*, No. 1:05CV1446 (JCC), 2006 WL 3196545, at *9 (E.D. Va. Nov. 1, 2006) (holding that "if an employee cannot perform the essential function of attendance, even if due to FMLA leave, then the employee is still not a 'qualified individual' within the

before she was terminated, it appears as argued by Defendant that Plaintiff completely abandoned her employment. The evidence shows that on December 19, 2017, Nurse Foxx notified Defendant that Plaintiff was not planning to return to work for Defendant. (ECF No. 27-1 ¶ 23; *id.* at 41.) Further according to the nurse, Plaintiff instructed her not to send the form to Defendant seeking an accommodation. (*Id.* ¶ 23; *id.* at 41.) The evidence shows therefore that Plaintiff failed to perform another essential function of her employment, that of providing a reliable level of attendance, even after being warned to do so. (*Id.* ¶ 24; *id.* at 42.)

Accordingly, Plaintiff has failed to provide sufficient admissible evidence to satisfy the second element of a of a prima facie case of discrimination—that she is a qualified individual protected by the ADA—while Defendants have provided substantial evidence of her lack of attendance, poor customer service, and disruptive behaviors with other employees. (*See* ECF No. 27-1 ¶¶ 11–14, 17; *id.* at 22–30, 33–34; 27-2 at 9–10.)

(2)    *Defendant did not discharge Plaintiff because of her disability*

Assuming *arguendo* that Plaintiff was a qualified individual protected by the ADA, her claim for disability discrimination would still fail because Plaintiff has not offered sufficient evidence to raise a genuine issue that Defendant terminated her because of her disability. Defendant also argues that "no reasonable jury could find that she suffered an adverse employment action because of her disability." (ECF No. 27 at 15.) Defendant contends that Plaintiff may be alleging that she was constructively discharged, because she

meaning of the ADA."); 29 C.F.R. § 825.702(a) (("Nothing in the FMLA modifies or affects any Federal or State law prohibiting discrimination on the basis of . . . disability. FMLA's legislative history explains that FMLA is not intended to modify or affect the . . . American with Disabilities Act of 1990 [as amended], or the regulations issued under the act.")

"seems to allege that [Defendant's] failure to provide a reasonable accommodation effectively forced her to abandon her position, which led to her termination." (*Id.*)

"Constructive discharge occurs 'when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.'" *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 244 (4th Cir. 1997) (internal quotations omitted) (quoting *Holsey*, 743 F.2d at 209). To prove a claim of constructive discharge, a plaintiff must prove "that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign." *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016). The standard for constructive discharge requires "objective intolerability," but not "deliberateness, or a subjective intent to force a resignation." *EEOC v. Consol Energy*, Inc., 860 F.3d 131, 144 (4th Cir. 2017) (internal quotation marks omitted) (quoting *Green*, 136 S. Ct. at 1779–80), *cert. denied*, 138 S. Ct. 976 (2018). "[M]ere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004)). "Constructive discharge claims are held to a high standard, and even truly awful working conditions may not rise to the level of constructive discharge." *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 783 (D. Md. 2010) (internal quotations omitted).

A plaintiff alleging constructive discharge must prove the following: (1) deliberateness of the employer's action; and (2) intolerability of the working conditions. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186–87 (4th Cir. 2004). To prove deliberateness, the plaintiff must show that the employer specifically intended its actions

13

"as an effort to force the employee to quit." *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354 (4th Cir. 1995). A plaintiff can demonstrate deliberateness by presenting actual evidence of the employer's intent "to drive the employee from the job, or circumstantial evidence of such intent, including a series of actions that single out a plaintiff for differential treatment." *Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir. 1993). To prove intolerability, the plaintiff must show that, objectively, a reasonable person in his position "would have felt compelled to resign." *Munday*, 126 F.3d at 244. It is insufficient to show "merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign." *Blistein v. St. John's Coll.*, 74 F.3d 1459, 1468 (4th Cir. 1996).

Here, Plaintiff has failed to present any evidence from which a reasonable juror could find that she was constructively discharged. There is no evidence in the record, direct or circumstantial, that demonstrates that Defendant deliberately intended its actions to force Plaintiff to quit. The evidence is actually to the contrary; after Plaintiff refused to return to work, Defendant made several attempts to contact Plaintiff and get her back to work. In addition, while coordinating with Plaintiff regarding her return, Defendant held her position even after her FMLA leave expired. Nor does the evidence in the record demonstrate that Plaintiff's working conditions were intolerable. The call center and switch board area to which Plaintiff was moved had the same space area, furniture, and equipment as the front desk area. (ECF No. 27-2 ¶ 9.) The only difference between the two areas was that caseworkers at the front desk interact with client both on the phone and in person, while case workers in the call center only interact with clients on the phone. (*Id.* ¶¶ 8–9.) Plaintiff has only shown mere dissatisfaction with the reassignment of her workspace.

Given the high standard that constructive discharge claims are held to, this is insufficient to establish intolerability such that a reasonable person would resign. Because Plaintiff cannot meet the standard of establishing objective intolerability, she cannot prove that Defendant constructively discharged her. Accordingly, no reasonable jury could find that Plaintiff was terminated because of her claimed disability.

  *(3)  Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff*

  Even if Plaintiff had been able to establish a prima facie case of disability discrimination, her claim would still fail, because Defendant has produced evidence of a legitimate, non-discriminatory reason for terminating her. Defendants have offered evidence which shows that Plaintiff was terminated when she abandoned her job after failing to return from FMLA leave. (ECF Nos. 27-1 ¶¶ 7, 23–26; *id.* at 41, 42, 45.)

  Defendant has offered the following in support of its contention that it terminated Plaintiff for job abandonment: On December 19, 2017, Ms. Foxx notified Defendant that Plaintiff was not planning to return to work for Defendant. (*Id.* ¶ 23; *id.* at 41.) The next day, Defendant sent Plaintiff "a letter notifying her that [Defendant] intended to terminate her employment on December 28, 2017, unless she received a clearance letter . . . and returned to work on or before that date." (*Id.* ¶ 24; *id.* at 42.) Plaintiff failed to comply, and as a result, she was terminated on December 28, 2017, "due to her failure to return from medical leave." (*Id.* ¶ 26; *id.* at 45.)

  Thus, Defendant has satisfied its burden of production and now the burden shifts back to Plaintiff to persuade the fact finder that "the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. A plaintiff may show pretext "either directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256. The "ultimate question" at this stage is not whether a plaintiff is able to show that defendant's justification is false, but rather "whether the employer intentionally discriminated" based on the impermissible factor in question. *Love-Lane v. Martin*, 355 F.3d 766, 788 (4th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–47 (2000)). To meet its burden, the plaintiff must prove "*both* that the reason was false, *and* that discrimination was the real reason." *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (quoting *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)). "An employer is entitled to summary judgment on the issue of pretext if the employee 'create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred.'" *Howard v. Coll. of the Albermarle*, 262 F. Supp. 3d 322, 332 (E.D.N.C. 2017) (quoting *Reeves*, 530 U.S. at 148), *aff'd*, 697 Fed. Appx. 257 (4th Cir. 2017).

Here, Plaintiff has failed to offer any admissible evidence that Defendant's contention that they terminated her for job abandonment was false; nor does she provide evidence showing that discrimination was the real reason for her termination. There is abundant and uncontroverted evidence showing that Plaintiff failed to return from FMLA leave and that Defendant terminated her for that reason. Thus, there is no evidence in the record from which a reasonable fact finder could conclude that Defendant's reasons for terminating Plaintiff were pretextual.

Accordingly, Defendant is entitled to judgment as a matter of law as to Plaintiff's ADA discrimination claim.

## C. ADA Failure to Accommodate

Under the ADA, an employer cannot discriminate "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "Such unlawful discrimination can include the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise *qualified individual* with a disability who is an applicant or employee,'" unless such covered entity can demonstrate that the accommodation would impose undue hardship. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)) (emphasis added). "A reasonable accommodation is one that 'enables [a qualified] individual with a disability . . . to perform the essential functions of [a] position.'" *Jacobs*, 780 F.3d at 580 (quoting 29 C.F.R. § 1630.2(o)(1)(ii)). To state a prima facie case for failure to accommodate under the ADA, Plaintiff must show: (1) that she was an individual who had a disability within the statute; (2) that the employer had notice of the disability; (3) that, with reasonable accommodation, she could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. *Wilson*, 717 F.3d at 345.

Here, Defendant argues that Plaintiff cannot establish the fourth element of her claim for failure to accommodate because "Plaintiff failed to engage in the interactive process necessary to identify alternative accommodations." (ECF No. 27 at 18.) Specifically, Defendant argues that "Plaintiff never provided [Defendant] with sufficient information to propose alternative reasonable accommodations as part of the 'interactive process' anticipated by the EEOC." (*Id.* at 21.)

"Implicit in the fourth element is the . . . requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." *Haneke*

*v. Mid-Atlantic Capital Mgmt.*, 131 F. App'x. 399, 400 (4th Cir. 2005); *see Wilson*, 717 F.3d at 346. "The duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to [her] employer [her] disability and [her] desire for an accommodation for that disability." *Wilson*, 717 F.3d at 346–47. "This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). "An employer may reasonably accommodate an employee without providing the exact accommodation that the employee requested. Rather, the employer may provide an alternative reasonable accommodation." *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 415 (4th Cir. 2015); *see Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 Fed. App'x 314, 323 (4th Cir. 2011) ("[A]n employer is not obligated to provide an employee the accommodation he or she requests or prefers; the employer need only provide some reasonable accommodation.").

For the interactive process to be effective, it requires "bilateral cooperation, open communication, and good faith." *Allen v. City of Raleigh*, 140 F. Supp. 3d 470, 483 (E.D.N.C. 2015). As the Fourth Circuit has noted:

> [N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Crabill*, 423 Fed. App'x at 323 (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135–36 (7th Cir. 1996)).

18

"During the interactive process, an employer may request and require that the employee provide sufficient medical documentation." *Allen*, 140 F. Supp. 3d at 485 (internal quotation marks omitted). An employer may ask for documentation that "(1) describes the nature, severity, and duration of the employee's impairment, the activity or activities that the impairment limits, and the extent to which the impairment limits the employee's ability to perform the activity or activities; and (2) substantiates why the requested reasonable accommodation is needed." U.S. Equal Emp. Opportunity Comm'n, Notice No. 915.002, Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act (ADA), 2000 WL 33407181, at *10 (July 27, 2000). The employer will not be liable "where it is the employee who refuses to engage in, or who causes the breakdown of, the requisite interactive process to determine a reasonable accommodation." *Williams v. Va. Polytechnic Inst. & State Univ.*, 451 F. Supp. 3d 467, 477 (E.D. Va. 2020).

Here, Defendant received an email from Ms. Foxx on December 8, 2017, stating that Plaintiff was requesting that she be returned to the front desk because of "her anxiety and reported claustrophobia." (ECF No. 27-1 ¶ 19; *id.* at 37.) The record indicates that this was the first time Defendant received notice of her claimed disabilities and request to return to the front desk as an accommodation. It is important to highlight that the email identified that Plaintiff's claustrophobia was reported—not diagnosed—and that it was Plaintiff who requested the accommodation of being returned to the front desk—not Ms. Foxx stating that such accommodation was either necessary or reasonable. Defendant also received a letter from Plaintiff's attorney the same day that indicated that Plaintiff suffered "multiple impairments that substantially limit her major life activities, . . . caused by anxiety,

19

depression, and claustrophobia." (*Id.* ¶ 20; *see id.* at 38.) These communications triggered Defendant's duty to engage in the interactive process with Plaintiff to identify a reasonable accommodation. *See Wilson*, 717 F.3d at 346–47.

The email from Ms. Foxx and letter from Plaintiff's attorney were the only documentation she provided in her request for a reasonable accommodation. (*See* ECF No. 27-1 at 51–53.) Notably absent from these communications was the identification of the precise limitations resulting from her claimed disabilities and potential reasonable accommodations to overcome those limitations. *See* 29 C.F.R. § 1630.2(o)(3). Plaintiff failed to provide sufficient medical documentation describing the nature, severity, and duration of her impairment, the activity or activities that the impairment limits, and the extent to which the impairment limits her ability to perform the activity or activities; and any substantiation regarding why she must be returned to the front desk. *See* EEOC, *supra*, 2000 WL 33407181, at *10. Because Plaintiff failed to provide Defendant with the necessary documentation and information regarding her alleged disabilities, Defendant was unable to engage in the interactive process to identify and propose reasonable accommodations for her.

Moreover, Plaintiff failed to engage in the interactive process in good faith. Plaintiff's sole requested accommodation was to be returned to working at the front desk. After she was informed that she would not receive her preferred accommodation, Plaintiff left and did not return. Defendant attempted to engage in the interactive process again by reaching out to Plaintiff's attorney to obtain more information about her disabilities and to Plaintiff to encourage her to provide the necessary documentation. (ECF No. 27-1 ¶ 22; *id.* at 39–40, 42.) However, Plaintiff never responded to Defendant. Instead, Defendant

was informed by Ms. Foxx that Plaintiff refused to provide the additional documentation to support her requests. (*Id.* ¶ 23; *see id.* at 41 (Plaintiff asked Ms. Foxx "not return the reasonable accommodations form at this time.").)

The Court concludes that Plaintiff failed to engage the interactive process in good faith, which resulted in the breakdown of the interactive process, by not responding to Defendant's attempts to engage in the interactive process and not making reasonable efforts to help Defendant determine what specific accommodations she needed. *See Crabill*, 423 Fed. App'x at 323. Because, as this Court concludes, the evidence shows that Plaintiff caused the breakdown of the interactive process, the Court further concludes that no reasonable jury could find Defendant liable for refusing to provide Plaintiff with a reasonable accommodation. *See Williams*, 451 F. Supp. 3d at 477. Therefore, Plaintiff cannot establish a prima facie case for failure to accommodate under the ADA. Accordingly, Defendant is entitled to judgment as a matter of law as to Plaintiff's ADA Failure to Accommodate claim.

## CONCLUSION

As earlier stated, the judicial inquiry on summary judgment is to scrutinize Plaintiff's case to determine whether she has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of her claim at trial. Plaintiff has failed to meet her burden on each of her claims, and Defendant has demonstrated that it is entitled to judgement as a matter of law on each claim. Plaintiff's action must be dismissed.

For the reasons stated herein, the Court enters the following:

**ORDER**

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 26), is GRANTED and this action is DISMISSED.

This, the 26th day of May 2022.

/s/ Loretta C. Biggs
United States District Judge